IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TANESHA HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV356 |
| | ) | |
| ARCAN CAPITAL, LLC, and CMJD | ) | |
| WINSTON-SALEM APARTMENTS, | ) | |
| LLC d/b/a/ SEDGEFIELD | ) | |
| APARTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this putative class action alleging unlawful debt collection practices against Arcan Capital, LLC ("Arcan Capital") and CMJD Winston-Salem Apartments, LLC ("CMJD Winston-Salem") in Forsyth County Superior Court on March 26, 2018. (ECF No. 6.) Defendants removed the case to this Court "pursuant to 28 U.S.C. § 1332(d)(1) and 28 U.S.C. §§ 1441 and 1446" on May 1, 2018. (ECF No. 1.) Before the Court is Plaintiff's Motion to Remand. (ECF No. 13.) For the reasons stated below, Plaintiff's motion is granted.

I.     BACKGROUND

Plaintiff leased an apartment from Sedgefield Apartments, which was operated by Arcan Capital. (ECF No. 6 ¶¶ 8, 13.) In September 2017, Plaintiff was late in making a rent payment and was charged an additional 5% of her monthly rent, pursuant to the terms of her lease. (*Id.* ¶¶ 39–40; ECF No. 6-2 at 2.) On September 26, 2017, Defendants initiated a

Complaint in Summary Ejectment in Small Claims Court in Forsyth County. (ECF No. 6-3.) On September 28, 2017, Defendants charged Plaintiff $191.00 for "Eviction/Filing Fees." (ECF No. 6-2 at 2.) On October 11, 2017, Defendants obtained a Judgment in their Action for Summary Ejectment, in which the costs of the action were taxed to the Defendants. (ECF No. 6-4.) The same pattern repeated for the month of October, with Plaintiff being charged both a 5% late fee and $191.00 for "Eviction Filing Fees." (ECF No. 6 ¶ 44–48; ECF No. 6-2 at 2; ECF Nos. 6-5, 6-6.)

Plaintiff filed this action individually and on behalf of a class, asserting three claims of violations of state law: one violation of the North Carolina Residential Rental Agreements Act, N.C. Gen. Stat. § 42-46, one violation of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50, *et seq.*, and one violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq.* (ECF No. 6 ¶¶ 66–96.) Plaintiff's putative class consists of:

> all tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in one of the apartments owned or managed by Defendants[ ] in North Carolina (c) were charged Court Costs and Attorneys' Fees prior to a North Carolina court taxing such Court Costs and Attorneys' Fees to the particular individual (d) or actually paid such Court Costs and Attorneys' Fees to Defendants.

(*Id.* ¶ 50.)

Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and diversity jurisdiction, 28 U.S.C. § 1332(a). (ECF No. 1 ¶¶ 11, 12.) Plaintiff now moves to remand this case back to state court, arguing that this Court

does not have jurisdiction over this matter. (ECF No. 13.) Plaintiff also requests that she be awarded attorney's fees pursuant to 28 U.S.C. § 1447(c). (ECF No. 14 at 19–22.)

## II. DISCUSSION

Subject matter jurisdiction relates to the Court's power to hear this case. *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448, 453 (4th Cir. 2012) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Thus, the Court must address this issue before addressing other issues in the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The burden of establishing subject matter jurisdiction rests with the party seeking removal. *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A defendant can remove a state court action to federal court if it is one over which the district courts of the United States have original jurisdiction. *Id.* § 1441(a). Defendants argue that this Court has jurisdiction over this case under both CAFA and diversity jurisdiction. (ECF No. 1 ¶¶ 11, 12.) This Court will address both bases of jurisdiction in turn.

### A. CAFA—§ 1332(d)

A district court has jurisdiction pursuant to CAFA if the following requirements are satisfied:

> (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, *id.* § 1332(d)(5)(B).

3

*Quicken Loans, Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013) (quoting *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011)). "To determine whether the jurisdictional minimum is satisfied, the district court looks to the aggregated value of class members' claims." *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 (4th Cir. 2009) (citing 28 U.S.C. § 1332(d)(6)). The party removing an action to federal court bears the burden of establishing, by a preponderance of the evidence, that jurisdiction is appropriate. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553–54 (2014). "Though the Court typically construes removal jurisdiction strictly, *see Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005), there is no presumption in favor of remand when cases are removed under CAFA, [*Dart Cherokee*, 135 S. Ct. at 554]." *Scott v. Cricket Commc'ns, LLC*, Civ. A. No. GLR-15-3330, Civ. A. No. GLR-15-3759, 2018 WL 1583552, at *4 (D. Md. Mar. 30, 2018).

Plaintiff only disputes the amount in controversy requirement,[1] arguing that Defendants "have not met their burden of establishing that the amount in controversy exceeds $5,000,000 exclusive of interest and costs." (ECF No. 14 at 5.) Defendants have introduced evidence, in the form of a declaration, showing that "in the past 24 months, properties managed by Arcan Capital, LLC may have sent approximately 3,222 late payment notices to several hundred residents in apartment complexes in North Carolina." (ECF No. 1-5 ¶ 9.) Defendants argue that "[i]f Plaintiff were to prove one violation of [the Debt Collection Act]

---

[1] As for the parties' diversity of citizenship, Plaintiff alleges that she is a North Carolina citizen. (ECF No. 6 ¶ 8.) Defendants have introduced a declaration, stating that Arcan Capital "is a Georgia citizen, as the owners of its membership interests are citizens and residents of Georgia," (ECF No. 1 ¶ 9 (citing ECF No. 1-4 ¶ 6)), and that CMJD Winston-Salem is "an Illinois citizen, as the owner of its membership interest is another limited liability company (CMJD Group, LLC), and the owners of the membership interests in CMJD Group, LLC are all either (1) citizens and residents of Illinois or (2) a trust organized under the laws of Illinois," (ECF No. 1 ¶ 10 (citing ECF No. 1-4 ¶¶ 8–9)).

for each late payment notice, and the class was awarded the maximum statutory amount of $4,000 per violation, the putative class[ ] could receive a judgment of more than Five Million Dollars ($5,000,000) in statutory penalties alone."  (ECF No. 1 ¶ 17.)

Plaintiff argues that Defendants' evidence regarding the number of "late payment notices" is not the same as the number of putative class members, nor the number of times any class member was assessed Court Costs and Attorneys' Fees.  (ECF No. 14 at 10–11.)  Per Defendants' declaration, a "late payment notice" is sent every time a tenant is assessed a "5% late charge."  (ECF No. 1-5 at ¶ 8.)  Plaintiff's putative class, however, is comprised of tenants of Defendants' apartments who "were charged Court Costs and Attorneys' Fees" in violation of certain North Carolina laws.  (ECF No. 6 ¶ 50.)

These are two completely different charges.  Plaintiff alleges, and Defendants do not disagree, that, pursuant to Defendants' policy, a 5% late charge is always assessed before "Court Costs and Attorneys' Fees" are ever assessed.  (ECF No. 6 ¶¶ 26–28; *see* ECF No. 1-5 ¶¶ 7–9; ECF No. 6-2 at 2.)  That means that although every assessment of "Court Costs and Attorneys' Fees" is preceded by a "late payment notice," the reverse is not necessarily true: each "late payment notice" is not necessarily followed by an assessment of "Court Costs and Attorneys' Fees."  Therefore, the number of "late payment notice[s]" or 5% late charges only serves as an upper limit to the number of potential "Court Costs and Attorneys' Fees" charges.  (*See* ECF No. 6 ¶¶ 26–28.)  Because the number of "late payment notice[s]" bears no other relation to the number of "Court Costs and Attorneys' Fees" charges, Defendants have failed to provide sufficient evidence regarding the number of times tenants were charged "Court Costs and Attorneys' Fees."  (*See* ECF No. 1.)  If a removing party "present[s] no credible

evidence to support" such an important component of the amount in controversy, then the removing party has failed to "satisfy its burden of demonstrating [by a preponderance of the evidence] that jurisdiction would be proper."[2] *See Bartnikowski*, 307 F. App'x at 735–37 ("[The removing party's] ultimate estimate of the amount in controversy, however, is fatally undermined by the wholly unsupported assumption on which its calculations ultimately rest.").

Defendants argue that their evidence is simply "overinclusive," and that "[a] removing defendant can use overinclusive evidence to establish the amount in controversy so long as the evidence shows it is more likely than not that a fact finder might legally conclude that damages will exceed the jurisdictional amount." (ECF No. 18 at 13 (quoting *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017)) (internal quotation marks omitted).) The *Scott* case goes on to state, however, that "[t]o meet its burden, [the removing party] must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." *Scott*, 865 F.3d at 197. Further, "[i]n making such a determination, the district court 'may consider which party has better access to the relevant information.' . . . [Plaintiff] is the master of [her] complaint, but [Defendants] [are] the master[s] of [their] notice of removal." *Id.* (quoting *Amoche v. Guar. Tr. Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)).

Defendants do not state whether they have access to the relevant data: the number of times they charged "Court Costs and Attorneys' Fees" prior to a court taxing such costs on tenants. (ECF No. 6 ¶ 50; *see* ECF No. 18.) If that data does exist, however, it would be in

---

[2] Accordingly, Defendants' hypothetical arguments regarding the number of class members it would require to reach the amount in controversy requirements are unpersuasive. (*See* ECF No. 18 at 13–14.)

6

Defendants' control.  (*See* ECF No. 1-5 ¶ 6 (declaring that Arcan Capital operates Sedgefield Apartments).)  Defendants have failed to provide the Court with sufficient factual matter to determine the amount in controversy, such that the Court may only "speculate" as to whether "the class action belongs in federal court."  *See Scott*, 865 F.3d at 197.  Therefore, because Defendants have failed to carry their burden, this Court is unable to conclude that it has jurisdiction over this case pursuant to CAFA.[3]

### B. Diversity Jurisdiction—§ 1332(a)

"Congress empowered federal district courts to adjudicate civil actions between 'citizens of different States' where the amount in controversy exceeds $75,000."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (quoting 28 U.S.C. § 1332(a)(1)).  For a class action to gain jurisdiction under § 1332(a), each named plaintiff in the class action must meet the jurisdictional $75,000 threshold.  *Snyder v. Harris*, 394 U.S. 332, 336 (1969) ("[I]t is essential that the demand of each [named plaintiff] be of the requisite jurisdictional amount." (quoting *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911))).  Defendants, therefore, "must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]" as to the sole named plaintiff in this action.  *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (alteration in original) (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).

---

[3] Plaintiff also argues that CAFA's "Local Controversy Exception" applies to this case and that the Court, therefore, does not have jurisdiction under CAFA.  (ECF No. 14 at 12–16 (discussing 28 U.S.C. § 1332(d)(4)).)  Because this Court has concluded that CAFA does not confer jurisdiction in this case, the Local Controversy Exception does not apply.  *See* 28 U.S.C. § 1332(d)(4).

7

"Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). All doubts regarding the jurisdiction of this Court to hear a case will be resolved in favor of remand. *Id.* "The policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *see also Able v. Upjohn Co.*, 829 F.2d 1330, 1332 (4th Cir. 1987) ("Th[e] congressional desire to restrict removal has been understood to require that doubts about the propriety of removal be resolved in favor of retained state court jurisdiction."), *overruled on other grounds by Caterpillar Inc. v. Lewis,* 519 U.S. 61, 74 n.11 (1996).

The parties do not dispute that they are "citizens of different states," satisfying § 1332(a)'s diversity element. 28 U.S.C. § 1332(a); (ECF No. 18 at 5–7; *see* ECF No. 14 at 13, 16–19; ECF No. 19 at 5–8.) Instead, Plaintiff argues that Defendants have failed to show that the amount in controversy for Plaintiff's individual claims exceeds $75,000. (ECF No. 14 at 16–19.) Plaintiff alleges that she suffered $382.00 in actual, or compensatory, damages when Defendants twice charged her $191.00 for "Eviction Filing Fees." (*Id.* at 18; ECF No. 6-2 at 2.) If those compensatory damages are trebled, pursuant to NCUDTPA, and combined with the maximum statutory penalties available, the total is approximately $9,146.[4] (ECF No. 14 at 18.) Defendants argue in response that because Plaintiff asserted a claim for punitive damages as well, a potential jury award including the punitive damages could exceed $75,000. (ECF No. 18 at 8.) Plaintiff responds by arguing that such a large punitive damages award would be

---

[4] Plaintiff argues that her compensatory damages may be trebled pursuant to NCUDTPA, bringing the total to $1,146. (*Id.*) Further, if she is awarded the maximum amount of statutory damages pursuant to the North Carolina Debt Collection Practices Act, of $4,000 for each violation, which would total $9,146. (*Id.*)

8

unconstitutional. (ECF No. 14 at 18–19; ECF No. 19 at 6–8.) To reach the jurisdictional threshold of $75,000, a court would have to award Plaintiff $65,869 in punitive damages,[5] over seven times the amount of compensatory and statutory damages. (ECF No. 14 at 19.)

The central question is whether Defendants have met their burden to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See Francis*, 709 F.3d at 367. The Court may "consider the availability of punitive damages" when calculating the amount in controversy. *Chek v. State Farm Fire & Cas. Co.*, 5:13-CV-378-JG, 2014 WL 12680676, at *2–3 (E.D.N.C. Mar. 17, 2014). However, "a demand for punitive damages, without more, is insufficient to establish that the amount in controversy exceeds $75,000." *Matt v. Fifth Third Bank, Inc.*, No. 5:18-CV-101-BR, 2018 WL 3846310, at *3 (E.D.N.C. Aug. 13, 2018); *see also Dagiel v. Kemper Corp.*, Civ. No. 1:11cv262, 2012 WL 1596978, at *2–3 (W.D.N.C. May 7, 2012) (disagreeing with the defendant's argument that "in light of the North Carolina [punitive damages] statute[,] . . . the mere assertion of a claim for punitive damages *per se* fulfills the statutory jurisdictional amount"); *Barberio v. Am. Family Life Assurance Co. of Columbus*, Civ. A. No. 5:08CV132, 2008 WL 4724318, at *2 (N.D.W. Va. Oct. 24, 2008) ("The mere threat of punitive damages, without more, does not give rise to federal jurisdiction." (internal quotation marks omitted)).

Defendants simply argue that "because [Plaintiff] seeks punitive damages, a jury verdict award of up to $250,000 is possible under North Carolina state law and possible in North Carolina state court." (ECF No. 18 at 8.) They make no further arguments, nor provide any

---

[5] North Carolina law caps the amount of punitive damages available at $250,000 or "three times the amount of compensatory damages," whichever is greater. N.C. Gen. Stat. § 1D-25(b).

9

additional evidence, to support their contention that they meet their burden of demonstrating that the amount in controversy exceeds $75,000. (*See id.*) Two factors weigh in favor of finding that Defendants have not met that burden. First, the low amount of compensatory damages claimed by Plaintiff individually, $382.00, make it unlikely that a court would award over $65,000 in punitive damages, in addition to $8,764 in statutory penalties and treble damages.[6] *See Breen v. Motorists Mut. Ins. Cos.*, Civ. A. No. 5:14CV148, 2014 WL 7183927, at *2–3 (N.D.W. Va. Dec. 16, 2014) (concluding that a request for $36,654.00 in compensatory damages and an undefined amount of punitive damages was "speculative at best" as to whether it met the $75,000 amount in controversy); *Med-Surg Grp., Inc. v. Aetna Health Mgmt., Inc.*, 832 F. Supp. 2d 659, 661–62 (S.D. W. Va. 2011) (concluding that a request for $5,723.50 in compensatory damages and an undefined amount of punitive damages did not meet defendant's burden); *Delph v. Allstate Home Mortg., Inc.*, 478 F. Supp. 2d 852, 854–55 (D. Md. 2007) (concluding that a request for $11,950.65 in compensatory damages and an undefined amount of punitive damages did not show, by a preponderance of the evidence, that the amount in controversy exceeded $75,000). Second, Defendants do not point to any allegations in the Complaint that would indicate that punitive damages would be appropriate in this case. *See A2C2 P'ship LLC v. Constellation Software, Inc.*, Civ. A. No. 2:13–cv–01449, 2013 WL 5204756, at *4–5 (S.D.W. Va. Sept. 13, 2013) (addressing the factors considered when granting punitive damages, and noting that the defendant "offer[ed] nothing to convince the Court that a punitive damage award is anything but speculative").

---

[6] Treble damages are considered a form of punitive, not compensatory, damages. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 785–86 (2000).

10

Defendants' argument that a request for punitive damages is sufficient to satisfy the jurisdictional threshold in this case, without more, is at best speculative and therefore fails meet their burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Matt*, 2018 WL 3846310, at *3. Thus, because "federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151.

Accordingly, because Defendants have failed to demonstrate that this Court has jurisdiction under either CAFA or diversity jurisdiction, pursuant to § 1332(a), Plaintiff's motion to remand will be granted.

### III. ATTORNEY'S FEES

Plaintiff also requests in their Motion to Remand that attorney's fees be awarded pursuant to 28 U.S.C. § 1447(c). (ECF No. 14 at 19–22.) Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has explained that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case," but a court's "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* at 141 (internal quotation marks omitted). These purposes include "deter[ring] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are

satisfied." *Id.* at 140. The court need not find bad faith by the movant in order to award fees under § 1447(c). *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996).

Although Defendants' arguments were unsuccessful, the Court does not find that they were objectively unreasonable. There is no indication in the record that Defendants removed this case for an improper purpose. Accordingly, Plaintiff's request for attorney's fees and costs will be denied.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand, (ECF No. 13), is GRANTED. This case shall be REMANDED to the General Court of Justice of North Carolina, Forsyth County Superior Court Division. The parties shall bear their own costs related to removal and remand.

This, the 22nd day of March 2019.

/s/ Loretta C. Biggs
United States District Judge